IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ANTHONY BERNARD WINGFIELD | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv320 |
| UNKNOWN GARNER, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Anthony Bernard Wingfield, an inmate of the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this complaint under 42 U.S.C. § 1983 complaining of alleged violations of his constitutional rights in the TDCJ's Michael Unit. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. The operative complaint is Plaintiff's Second Amended Complaint (SAC), filed September 21, 2022. (Dkt. #30.)

Defendants Ellis, Garner, Cunningham, and Mershon have moved to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted. (Dkt. #31.) Plaintiff has not responded to that motion. For reasons explained below, the undersigned recommends that the motion be granted. The undersigned further recommends that Plaintiff's remaining claims be dismissed sua sponte and that Plaintiff's lawsuit be dismissed with prejudice in its entirety.

**I. Plaintiff's Pleadings**

After filing one amended complaint and several further efforts on Plaintiff's part to supplement his complaint, the Court ordered Plaintiff to file a second "amended complaint—in a single document—that will act as the operative pleading in this lawsuit." (Dkt. #28 at 1.) The Court reiterated in its order that "[t]his amended complaint will act as the operative pleading in this case,

and no further amendments will be permitted absent a showing of exceptionally good cause." (*Id.*) An amended complaint entirely supersedes and takes the place of an original complaint. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986).

The entire statement of claim in the SAC Plaintiff filed in response to that order provides as follows:

> 1st Sgt. Garner took shoes, forced to walk barefoot no confiscation papers (dates, times etc, original steps 1&2 grievances) Sgt. Ellis refused to intervene even after seeing plaintiff is a b/k amputee and shoes were serious medical need. After getting shoes back Sgt. Cunningham 7/3/21 reconfiscated shoes even after seeing medical paper-work (shoes again returned) C.O. Marshon denied plaintiff brace & limb clinic to alter new prosthesis due sole[l]y to plaintiff being unable to wear shower slides, policy change (I.O.C.) allowing shoes issued next morning. Plaintiff forced to suffer 38 more days till next brace & limb clinic. All step 1s &2s submitted to court previously.

(Dkt. #30 at 4.)

As Defendants, Plaintiff names Sgt. Unknown Ellis, Sgt. Unknown Garner, Sgt. Cunningham, C.O. Marshon, and "any other TDCJ official/employee responsible for discriminatory / denial of serious medical needs." (*Id.* at 3.) He seeks unspecified compensation for pain and suffering as well as violations of the Americans with Disabilities Act (ADA). (*Id.* at 4.)

## II. Defendants' Motions to Dismiss

Defendants move to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. (Dkt. ##21, 29.) First, they assert that any claims against Defendants in their official capacities should be dismissed for lack of jurisdiction under Rule 12(b)(1) because such claims are broadly barred by sovereign and Eleventh Amendment immunity. (Dkt. #31 at 3–4.)

Defendants also argue under Rule 12(b)(6) that Plaintiff fails to state a claim for which relief can be granted. Specifically, they assert that Plaintiff has failed to allege any facts

2

demonstrating the personal involvement of Defendant Ellis required to make her liable under Section 1983 as a supervisor and that he apparently seeks to hold her responsible solely due to her position of authority over Defendant Garner. (*Id.* at 5–6.)

Defendants further argue that Plaintiff fails to state a claim for deliberate indifference or violation of the ADA against any other Defendant. They say Plaintiff has not alleged facts that would demonstrate that Defendants Garner or Cunningham actually knew of a substantial risk of serious harm to Plaintiff that would result from confiscating his shoes. (*Id.* at 9.) At most, they say, Plaintiff alleges knowledge that he had a prosthetic limb, but that does not establish that Garner or Cunningham knew that the shoes were medically necessary. (*Id.* at 10.) And the delay in returning the shoes, like a brief delay in providing ordinary medical care, does not rise to the level of a constitutional violation. (*Id.*) Defendants assert that even if these facts are found to constitute a violation, their actions were objectively reasonable and not in violation of clearly established law, entitling them to qualified immunity. (*Id.* at 10–11.)

Defendants argue that Plaintiff's allegations also do not establish deliberate indifference on the part of Defendant Mershon. (Dkt. #31 at 11–12.) They say Plaintiff has not alleged facts that would establish that Mershon was subjectively aware that enforcing the shower shoe requirement for transport posed a substantial risk of serious harm to plaintiff or that he disregarded such a risk. (*Id.* at 11.) Further, the resulting 38-day delay in Plaintiff's attending the clinic is not sufficient to violate the Eighth Amendment. (*Id.* at 12.) And finally, Mershon, too, asserts that even if these facts are found to constitute a violation, her action were objectively reasonable, and she is entitled to qualified immunity. (*Id.*)

Likewise, Defendants assert that Plaintiff fails to state a claim for an ADA violation. (Dkt. #31 at 13–14.) They say that Plaintiff cannot show that he is being denied a reasonable

accommodation to access services where his shoes were returned after his ownership was verified, and he only experienced a 38-day delay in attending his clinic appointment. (*Id.* at 14.) Further, they say Plaintiff does not allege facts establishing that he has been discriminated against because of his disability, because both of the actions he complains about were taken for reasons unrelated to his disability and were later rectified to provide what Plaintiff needed. (*Id.*)

Finally, Defendants assert that Plaintiff's allegations that Defendants violated TDCJ policy do not establish a violation of his constitutional or federal rights. (Dkt. #31 at 14–15.)

**III. Legal Standards**

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). The Rules require the court to dismiss a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Claims barred by the invocation of sovereign immunity "can be dismissed only under Rule 12(b)(1)." *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts or evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). When the defendant alleges a facial attack under Rule 12(b)(1), "the trial court is required

merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

The Fifth Circuit has observed that motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and rarely granted." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). Such motions are generally evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).

Nevertheless, Federal Rule of Civil Procedure 12(b)(6) permits dismissal if a plaintiff "fails to state a claim upon which relief may be granted." A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414, 2012 WL 5419531 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and

conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id. Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

**IV. Discussion and Analysis**

<u>A. Official Capacity Claims</u>

Ordinarily, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. Here, the Defendants have moved that the claims against them in their official capacities be dismissed for lack of jurisdiction.

The Eleventh Amendment bars a suit in federal court against a state unless the sovereign has unequivocally expressed a waiver of its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). Furthermore, because state officials assume the identity of the government that employs them, state officials sued in their official capacity are not liable for damages under section 1983. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, any claim for damages against any Defendant in this case in his or her official capacity must be dismissed.

The *Ex Parte Young* doctrine "represents an equitable exception to Eleventh Amendment sovereign immunity," through which plaintiffs may seek injunctive relief to enforce federal law against a state official in his official capacity. *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (discussing *Ex parte Young*, 209 U.S. 123 (1908)). But in this case, Plaintiff does not seek any injunctive relief, and any such demand would

6

be invalid because he does not allege any ongoing violation:

> "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). "To obtain [declaratory] relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Id.*

*Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019) (dismissing claim for declaratory judgment and allowing excessive-force claim to proceed). Accordingly, Plaintiff's official-capacity claims against all Defendants for any violation of his constitutional rights must be dismissed.

    B. Individual Capacity Claims

  1. Deliberate indifference

The Court considers Plaintiff's constitutional claims under the Eighth Amendment and its prohibition against cruel and unusual punishment, which prohibits the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Eighth Amendment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing, and medical care. *Herman*, 238 F.3d at 664; *see also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones").

An Eighth Amendment violation occurs in prison only when two requirements are met. First, there is the objective requirement that the aggrieving condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina Cnty., Tex.*, 31 F.3d 331, 334 (5th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. at 304). Second, under a subjective standard, the Court must

determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In applying this standard, the determinative question is whether a defendant prison official subjectively knew that an inmate faced a substantial risk of serious harm yet disregarded that risk by failing to take reasonable steps to abate it. *Id.* To be deliberately indifferent, a prison official must have personally been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and the official must also be found to have drawn the inference. *Id*. Conclusory allegations are not sufficient to satisfy this standard; a plaintiff must allege facts to support what are otherwise broad and conclusory allegations of wrongdoing. *See Rougley v. GEO Group*, 2011 WL 7796488, at *3 (W.D. La. Nov. 7, 2011).

The Fifth Circuit has discussed the "high standard" involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Even defendants "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."

8

*Farmer*, 511 U.S. at 844. In sum, in order to show deliberate indifference, the prisoner must show (1) objective exposure to a substantial risk of serious harm, (2) the defendants had subjective knowledge of this substantial risk, (3) the defendants denied or delayed the prisoner's medical treatment despite their knowledge of this substantial risk, and (4) this denial of or delay in treatment resulted in substantial harm. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

Moreover, to be personally liable under Section 1983, an individual defendant "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017). Accordingly, supervisors are not liable under a *respondeat superior* theory for the conduct of their subordinates under Section 1983, but are only liable for their own unconstitutional actions and omissions. *Iqbal*, 556 U.S. at 676 (government officials not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*); *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (rejecting claim that defendant was liable for failure to supervise other officers because "[u]nder § 1983 . . . a government official can be held liable only for his own misconduct"). "Liability under § 1983 for a supervisor may exist based either on 'personal involvement in the constitutional deprivation,' or 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Martinez v. Maverick Cty.*, 507 F. App'x 446, 448 (5th Cir. 2013) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 n.2 (5th Cir. 1987)).

Plaintiff's allegations do not rise to this level. His allegation that Defendant Ellis, as a supervisor, "refused to intervene" in his subordinates' actions is not sufficient to make Ellis personally liable in any alleged violation. Moreover, the alleged violations themselves simply do not amount to cruel and unusual punishment. His special shoes were twice confiscated when they

should not have been, and he acknowledges that both times the shoes were returned. He does not allege any facts from which a jury could find that losing his shoes created a substantial risk of serious harm to him or that the Defendants who took his shoes were subjectively aware of that risk. And even if the shoe confiscations were negligent on Defendants' part, negligence does not amount to a constitutional violation. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997); *Gobert*, 463 F.3d at 346.

Nor does Plaintiff allege that he actually suffered any physical injury from the temporary deprivation of his shoes or the delay in being able to attend the limb clinic. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]") Accordingly, Defendants are correct that Plaintiff has failed to establish a violation of his right to be free from deliberate indifference to his serious needs under the Eighth Amendment.

2. Americans with Disabilities Act

Title II of the ADA prohibits "disability discrimination in the provision of public services." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Specifically, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

"Title II [of the ADA] imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (*per curiam*) (quoting *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) and *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998)); *see also*

10

*Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020). "[A] public entity's failure reasonably to accommodate the known limitations of persons with disabilities can also constitute disability discrimination under Title II." *Windham v. Harris County, Texas*, 875 F.3d 229, 235 (5th Cir. 2017) (citations omitted).

"To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (citation omitted). The ADA defines "disability" to mean: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . .." 42 U.S.C.A. § 12102(1).

To recover monetary damages based on a failure to accommodate, a plaintiff must also prove intentional discrimination. *See Smith v. Harris County, Texas*, 956 F.3d 311, 318 (5th Cir. 2020) (citing *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002)). In the context of a failure-to-accommodate claim, intentional discrimination requires actual knowledge that an accommodation is necessary. *See Cadena*, 946 F.3d at 724 ("[T]his court has affirmed a finding of intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering his chosen method of communication ineffective, and the deputy made no attempt to adapt."). If a defendant has attempted to accommodate a plaintiff's disability, then intentional discrimination requires knowledge "that further accommodation was necessary." *Id.* at 726.

The Fifth Circuit has clarified that intentional discrimination in this context requires a showing of "something more than 'deliberate indifference.'" *Id.* at 724. Deliberate indifference is

11

already an "extremely high" standard to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To demonstrate deliberate indifference a prisoner must show that the defendant knew of but disregarded an excessive risk to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* For example, to prevail on a claim of deliberate indifference where serious medical needs are concerned the prisoner must "submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

Plaintiff does not come close to meeting this standard. Even assuming that the short-term deprivation of his medical shoes or the delay in getting him to the limb clinic could constitute any discrimination or failure to accommodate under the ADA, he does not allege any facts from which a reasonable fact-finder could conclude that the discrimination was intentional. At worst, Plaintiff might establish that Defendants were negligent in their handling of his shoes and his transport to the limb clinic, but "[i]solated acts of negligence by a city employee do not come within the ambit of discrimination against disabled persons proscribed by the ADA." *Bracken v. G6 Hosp. LLC*, No. 4:14-CV-644-ALM-CAN, 2016 WL 3946791, at *7 (E.D. Tex. June 3, 2016), *report and recommendation adopted*, No. 4:14-CV-644, 2016 WL 3917701 (E.D. Tex. July 20, 2016) (quoting *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 930-31 (7th Cir. 2004)). Plaintiff thus fails to state a claim for violation of the ADA.

Moreover, Defendants are correct that the purported failure of TDCJ officials to follow their own regulations, policies, and procedures is not sufficient, in the absence of any other

violation, to state any civil rights claim. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("Our case law is clear, however, that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) ("The claim is that the mere failure of the TDCJ official to follow their own regulations was a constitutional violation. There is no such controlling constitutional principle.").

3. Qualified immunity

Alternatively, the Defendants have invoked the defense of qualified immunity. In order to overcome qualified immunity, a plaintiff must allege facts showing that the government official violated a plaintiff's right and that the right was clearly established at the time of the challenged conduct. *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022). The Fifth Circuit has explained as follows:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It protects 'all but the plainly incompetent or those who knowingly violate the law.' *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
>
> Our qualified immunity inquiry is two-pronged. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Second, we ask whether the right was 'clearly established.' *Id.* We can analyze the prongs in either order or resolve the case on a single prong. *Id.*

*Cunningham v. Castloo*, 983 F.3d 185, 190–91 (5th Cir. 2020).

After explaining that a right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that the defendant's conduct violated that right, and that

there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that the conduct is definitively unlawful, the Fifth Circuit went on to state:

> When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020). To meet that burden, the plaintiff must present evidence, viewed in her [i.e. the plaintiff's] favor, satisfying both qualified immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See id.*

*Cunningham*, 983 F.3d at 191; *see also Byrd v. Harrell*, 48 F.4th 343, 346 (5th Cir. 2022) ("When a government official has asserted qualified immunity, 'the burden shifts to the plaintiff to 'rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.'"" (Citation omitted)). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 643–44 (5th Cir. 2014).

While there is no doubt that in general terms, the right to be free from deliberate indifference to serious medical needs or ADA violations was established at the time of the events alleged in this case, Plaintiff does not allege facts that clearly establish a violation of those rights in this case, nor that any reasonable officer in Defendants' position would have known that their conduct was unlawful. In response to Defendants' assertion of qualified immunity, Plaintiff has not come forward with any case law establishing otherwise. The Defendants would thus be entitled to qualified immunity from suit even if the facts could be construed to amount to a constitutional or statutory violation.

## V.  Conclusion

For the reasons explained above, Plaintiff fails to state a viable claim for any type of relief with respect to any of his allegations, and the moving Defendants are entitled to dismissal under Fed. R. Civ. P. 12(b)(1) and (6). Because the Plaintiff omits any reference to any other Defendant in his SAC, he fails to state any claim against them, and any claims against non-moving parties should also be dismissed in full. 28 U.S.C. § 1915(e)(2).

## RECOMMENDATION

Accordingly, the undersigned recommends that Defendants' motion to dismiss (Dkt. #31) be **GRANTED** and that this action be **DISMISSED** pursuant to Rule 12(b)(1) and (6) for lack of jurisdiction and failure to state a claim for which relief can be granted.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 8th day of August, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE